Cited in 2 Binn. 7.

# William Turnbull, John Holker and Peter Mar- mie who survived Daniel Britt *against* James O'Hara.

A judge at *Nisi Prius*, who determines a question of evidence, but reserves the point, is not precluded from sitting in bank on the argument.

Upon reserved points, argued with a motion for a new trial on the merits, the plaintiff's counsel begins and concludes the argument.

The declarations of an agent may be given in evidence, to corroborate or dis- credit other declarations which have been proved; but what he has said not acting in his agency, cannot be received to establish any independent fact.

New trial will not be granted, where the cause is submitted to the jury on the credibility of testimony; nor where motion is founded on the discovery of evi- dence, which it was the fault of the party, that he did not produce at the trial.

MOTION for a new trial, grounded on the merits of the case, and on two points reserved.

The cause was tried before Mr. Justice SMITH, at a court of *Nisi Prius* held on the 2d December 1807, when a verdict passed for the plaintiffs for 27,707 dollars and 37 cents; and two ques- tions of evidence were reserved at the trial.

TILGHMAN, C. J. declined sitting on the argument, having been concerned as counsel for the defendant, unless the same became absolutely necessary for the purposes of justice.

BRACKENRIDGE, J. was also averse from sitting, having given testimony for the defendant on the trial, and from some peculiar circumstances existing between himself and Mr. Turnbull.

[Turnbull et al. *v.* O'Hara.]

It was then insisted by the defendant's counsel, that SMITH J. could not legally sit on the present argument; and the *447] case was compared to that of an appeal from the Circuit Court, in the decision whereof it was not competent to the judge who sat in the Circuit Court, to give an opinion.

But the chief justice declared, that the uniform practice both in England and this state had ever been, for the judges who had tried causes, to sit afterwards in judgment on the points reserved.

YEATES, J. concurred therein, and said that previous to the passing of the Circuit Court law on the 20th March 1779, such had been the constant usage, on trials at the Courts of *Nisi Prius.*   4 St. Laws 362.

BRACKENRIDGE, J. afterwards consented to sit during the argument.

The defendant's counsel then contended on the point of order, that they had the right to begin and conclude the argument.

YEATES, J.   On a motion for a rule to shew cause why a new trial should not be granted, or on a motion for a new trial where the merits are fully gone into, the party moving begins and concludes: but under the 24th rule of practice of this court, in arguing the points reserved, the plaintiff's counsel begins the argument.   If the grounds of the motion are separated, we can pursue this order; but if they are blended together in one argument, in order to save time, I do not see how we can counteract the settled rule of the court.

SMITH and BRACKENRIDGE, Justices concurred; and the counsel agreed to make one argument of it.

. SMITH, Justice, reported the evidence given upon the trial before him.   It was very lengthy, and consisted chiefly of depositions, letters, drafts, and other written documents.   Mr. Justice BRACKENRIDGE alone was personally examined as a witness. So much only of the evidence is detailed here, as will furnish a general idea of the facts, on which the reserved points were founded.

It was an action for money had and received to the plaintiff's use, and was grounded on a special contract made by the plaintiffs with general Henry Knox, in behalf of the board of treasury of the United States, on the 29th May 1787, for the supply of certain rations at fort St. Vincennes, by the 30th June following. *At the time of making this contract, the plaintiffs *448] had the general contract for the supply of the western troops; and one John Bradshaw was employed as their agent and commissary under that contract. ' He purchased and laid in the greater part of the rations specially contracted for; but whether he acted therein for the plaintiffs or the defendant,

[Turnbull et al. *v.* O'Hara.]

formed the great subject of dispute. The abstracts were made out in the name of the defendant, and delivered by the commanding officer to Bradshaw for his security. The defendant afterwards received $13,833$\frac{88}{90}$, the amount of the abstracts from the treasury; and for this sum, with the interest due thereon, the present action was brought.

Each of the parties claimed Bradshaw as their agent, and gave a great variety of testimony in support of their respective pretensions, much of which was contradictory and could not possibly be reconciled. Bradshaw was since dead.

The first reserved point was, whether a certain small book, containing a written statement in the hand writing of the said Bradshaw, of facts which had taken place as to the furnishing of the rations, and which had been made by him upon a suit which he had brought against one David Duncan, who had been connected with O'Hara, should be received in evidence? A reference had been entered into in that suit.

This testimony, Judge SMITH refused to admit for the following reason: Because he apprehended the said statement was made to be laid before referees in a suit brought by Bradshaw against Duncan; and it did not appear that it ever was laid before the referees; if it had, the plaintiffs here had no notice of that action or reference; nor was it in proof, that if Bradshaw had been their agent as commissary, he had any authority from them to bring the action, or enter into the reference. Besides, the action was brought and supported on the ground, that Bradshaw was not the agent of the plaintiffs, but the agent of the defendant. Shall therefore the statement of Bradshaw in the capacity of agent for the defendant, be given in evidence against the now plaintiffs by the present defendant? Surely not.

Afterwards in the course of the trial, the plaintiff's counsel offered to give in evidence, a certain letter bearing date June 8th, 1789, from the said Bradshaw to the plaintiffs; wherein he expresses his wonder, that O'Hara should pretend he had supplied the rations, inasmuch as his boat with provisions did not arrive at St. Vincennes until September 1787. He deplores his embarrassments, in consequence of his drafts in favour of those who had furnished the supplies, not being honoured; and declares, that he will retain the abstracts until the bill holders should be fully paid, &c. &c.

*Judge SMITH permitted this letter to go to the jury. [*449 Whether this letter was evidence in the abstract, he deemed it unnecessary to give any opinion. But as the defendant had given evidence of Bradshaw's declarations to Judge BRACKENRIDGE, this letter was evidence to contradict those declarations; and for that purpose only, he held the evidence to be admissible.

Messrs. Rawle and Hopkinson for the defendant, now contended, that every objection which could be urged against re-

[Turnbull et al. *v.* O'Hara.]

ceiving the statement of Bradshaw in evidence, held with equal force against the letter; consequently the decision in either the one case or the other, must have been wrong. The plaintiffs' counsel had without opposition, permitted the verbal declarations of Bradshaw to other witnesses at different times respecting his agency, to be given in evidence; and why should not his written declarations to the same effect be also received? Could any line of discrimination be drawn between such unwritten and written testimony? The plaintiffs considered him as their agent, and in that capacity, his declarations were evidence against them, made either in speech or writing. 1 Stra. 527. 1 Espin. Rep. 142. Any acknowledgment in the hand writing of the agent is as good evidence as if made by the party himself. 3 T. R. 454. So of one in the employment of another as an usher. 2 Espin. Rep. 692. So confession of an escape by an under sheriff is evidence against the sheriff. 1 Ld. Raym. 190. Even a letter of a nominal plaintiff had been received in evidence. 7 T. R. 668. Bradshaw must be considered either as an agent or a witness. If he is viewed in the latter character, his declarations at other times, may be shewn to corroborate or invalidate his testimony.

To this it was answered by Messrs. E. Tilghman and Dallas for the plaintiffs, that they fully conceded, that the declarations of a party oral or written may be given in evidence against him; and so those of one who represents him, provided they are made in his representative character. Thus, a master is liable to answer for any damages arising to another, for any negligence of his servant acting in his employ; but not for a wilful act of the servant, done without the direction or assent of such master. 1 East 106. No master is chargeable with the acts of his servant, but when he acts in execution of the authority given him. Ib. 108. Salk. 282. The plaintiffs objected to the little book containing the statement going to the jury, because it was the declaration of a person not on oath, whom the defendant would consider as his agent; though for the purpose of introducing this testimony he would be willing to call him the agent of the plaintiffs for *the moment. At the time of making this *450] statement, he was the mere obligee in a bond given by Duncan to him, not the agent of the plaintiffs, nor acting in their service. Duncan had been guilty of a gross misrepresentation to the commanding officer, that O'Hara had paid all the drafts of Bradshaw for the supplies furnished, and had thereby procured the abstracts to be issued in his name, though retained by Bradshaw. He afterwards delivered them up, on receiving a bond to take up certain outstanding bills, and the obligors having made default therein, a suit had been brought thereupon. Could then this unknown statement, in an unauthorized action, adverse to the interests of the plaintiffs, operate against them? Could Bradshaw, when he made it, be said to be acting in the

[Turnbull et al. *v.* O'Hara.]

capacity of their agent? It has been objected, that we suffered his oral declarations to go to the jury. But how will this avail, in the legal question? Admissions of the parties do not form the law. The propriety of a decision as to evidence cannot possibly be tested by the effect such testimony may have when all the circumstances of the case have been fully developed.

On the second reserved point, there can be no difficulty. If Bradshaw had been examined upon oath, he might have been discredited by his letter, stating contrary facts; *a multo fortiori* where his oral declarations have been shewn in evidence by the adverse party. His assertions to two witnesses have been proved by these two witnesses on the part of the defendant; and it was competent to the plaintiffs to shew his written assertions utterly repugnant thereto, in order to invalidate the effect of such testimony.

Together with these reserved points, the counsel on each side, on the motion for the new trial upon the merits, went with much ability into a minute detail of the evidence, which had been given; but their several arguments, tending to shew that the verdict was conformable or contrary to the evidence, are here omitted, being rendered unnecessary by the grounds of the decision.

Before the argument was closed, the defendant's counsel produced the certificates of two physicians at Pittsburgh, stating the illness of the defendant in the month of October last, which continued with some intermissions until the present month of December; likewise the affidavit of the defendant himself, stating that he had attended the trial of the cause six or seven times; that he was prevented by indisposition from attending at the last court of *Nisi Prius*, having been taken ill in October last and continuing ill until the 10th December instant; that for certain reasons, he believed Mr. Justice BRACKENRIDGE who was to hold the court of *Nisi Prius*, would not sit on the trial of *the cause; that he holds in his possession at Pittsburgh [*451 certain bills and drafts, which he now considers to be material testimony in the investigation of the merits of the case; and that he verily believes, that there is a balance due to him from the plaintiff and not on the other side.

These facts were also urged as grounds of a new trial; and the largeness of the sum found due to the plaintiffs, and the reasonable probability that justice had not been done by the verdict, were strongly insisted upon by the defendant's counsel. They were answered on the part of the plaintiffs.

The case was continued three days under advisement, and the opinion of the court was delivered by

YEATES, J. The case comes before the court on two points, reserved by Judge SMITH upon the trial, accompanied by a motion for a new trial, the verdict being alledged to be against evidence.

[Turnbull et al. *v.* O'Hara.]

The first question which presents itself for solution is, whether the small book, containing a written statement made by John Bradshaw, in the suit brought by him against David Duncan, should have been received in evidence at the trial?

It is headed "Bradshaw's Case," and is without date. It contains in the conclusion the following query: "Query, is not "Mr. Duncan liable for damages for breach of covenant; for "damages on protested bills; for false imprisonment?"

It appears evidently to me to be the state of his (Bradshaw's) case to be submitted to counsel; and it is admitted that he died before the trial at *Nisi Prius*.

From a review of the evidence given to the court and jury, previous to the offer of this book, it appears that the plaintiffs, as well as the defendant, insisted, that Bradshaw, in the supply of rations furnished for that portion of the army, which was to march to Post St. Vincennes, in pursuance of the resolutions of congress, transacted that business, as their agent respectively, and brought forward depositions and other testimony in support of their several adverse allegations. It certainly formed the most material consideration in the decision of the question by the jury.

Was then this written statement admissible in evidence? It is agreed, that if Bradshaw had been living, and was produced by the defendant as a witness on the trial, he could not be received as such without being sworn or affirmed; and further, that any declarations, either oral or written, which he had made, might be given in evidence on the one side, to shew his consistency in support of his testimony, or, on the other side, to discredit it, by shewing he had spoken differently of the same transaction. But it has been contended on the part of the defendant, that as *452] *the declarations of a party may be given in evidence, so also may those of his agent. If this statement had been made by the order or direction of the plaintiffs, it would be good evidence. But of this there is no proof nor even suggestion. Indeed it was sworn on the trial, that in the suits of Bradshaw against Duncan, and *e contra*, no notice was given to the plaintiffs, or either of them, to exhibit their claims.

If Bradshaw is deemed the agent of the defendant, he could not give his declarations in evidence, made long after the transaction of the business of the agency, so as to affect the interests of third persons. The agency was in June 1787, and the report of the referees in the suit against Duncan was dated 15th March 1790.

That action was grounded on a bond, conditioned for the payment of certain enumerated outstanding drafts, made by Bradshaw, on his surrender of the abstracts to Duncan. Although Bradshaw was then adverse to Duncan and O'Hara, yet his demand was hostile to the interests of the now plaintiffs. The only plausible ground then on which the defendant could introduce this book as evidence is, that Bradshaw, when he

[Turnbull et al. *v.* O'Hara.]

penned his statement, acted in his representative character as agent of the plaintiffs, and in the line of his consequent duties, and therefore it must be considered as their act. But this I cannot accede to, because he was not then in that capacity; and moreover, the defendant's counsel assume a ground which they have contested *totis viribus* both during the trial and the present argument, as to the agency of Bradshaw in purchasing the supplies. They cannot, for the purpose of giving evidence, affirm and disaffirm a fact in the same breath with any degree of consistency. I am therefore of opinion, that Judge SMITH did right in overruling this testimony. It was offered as proof of an independent fact, not in corroboration or detraction of the former declarations of Bradshaw.

The second reserved point is, whether a certain letter, bearing date June 8th, 1789, from the said John Bradshaw to the now plaintiffs, would have been received in evidence?

This letter amongst other things, stated the difficulties Bradshaw was under, in consequence of the protest of his drafts in favor of the persons who furnished the supplies for the expedition to Post St. Vincennes, and his assurances to the bill holders, that he would keep the abstracts until the fullest satisfaction was made to them. It points out, that the abstracts were made out in O'Hara's name, in consequence of Duncan's having wrote to general Harmar, that he had paid all his drafts; and expresses his earnest desire that the plaintiffs should so arrange the business as to enable them to take up his drafts.

*Before this testimony was offered, evidence was given [*453 on both sides of the declarations of Bradshaw respecting his agency, each party contending that they had severally made out their case, that he was their respective agent. A variety of circumstances, as well as positive proof, were relied on by each of the parties, tending to evince the amount of the bills taken up by the plaintiffs and defendant respectively; but on neither side was it insisted that they had taken up the whole of the outstanding bills. Judge SMITH did not determine the abstract question, that this letter was evidence of independent facts; but as the defendant had given evidence of Bradshaw's declarations, the plaintiffs were at liberty to give in evidence this writing to contradict those declarations. I see no reason to dissent from that decision.

Bradshaw was pressing to wind up his agency. While his bills remained unpaid, the business respecting the supply of rations was *res infecta;* and upon the same principle, that the declarations of a witness are admissible either to corroborate or impair the force of his testimony, might his expressions, either oral or written, be received during his agency, either on the one hand to strengthen, or on the other hand to take off, the effect of other declarations made on the same subject.

Having thus disposed of the two reserved points, I proceed to consider the general outline of the evidence adduced on the

[Turnbull et al. *v.* O'Hara.]

trial.   I will not affect to say that I have been able, since the argument, to examine minutely the mass of evidence which was exhibited to the jury.   With all my exertions I have found the time allotted to me to be too short to accomplish this object. But I have carefully perused such documents as appeared to me most material.

It appeared then undeniably, that in pursuance of a resolution of congress, a contract was fairly made between the board of treasury, through the instrumentality of the secretary at war, with Turnbull, Marmie and Co. to supply 300 men with rations for three months, on an expedition to Post St. Vincennes, which was out of the limits of the general contract, to be delivered at such place as colonel Harmar should appoint, on or before the 30th June 1787.   It necessarily follows, that if the plaintiffs performed their contract, they became entitled to all the profits and emoluments consequent thereon.

The defendant, who had obtained the new general contract, was informed by the secretary at war of this special agreement, and wrote for answer, that he had neither right nor inclination to interfere with the plaintiffs.   The plaintiffs received a Virginia warrant for $3000, on account of this special contract, which, not being paid, they afterwards received $3000 from the *treasury board in lieu thereof, and they gave bond with security, to account for the same with the proper department.   This bond was put in suit, and Turnbull obtained a verdict and judgment thereon in his favour.

*454]

By the deposition of general Harmar it appears, that the troops were furnished with the stipulated rations for the expedition to St. Vincennes within the time agreed upon, and at the place appointed by him.   The abstracts were made out in the name of the defendant, and delivered to John Bradshaw.   These vouchers afterwards coming to the hands of the defendant, he obtained payment of $13,833$\frac{2}{3}$ thereon from the treasury of the union.   Whether the defendant was entitled to retain this money, or whether the plaintiffs were entitled to recover it from him, with interest from the time of his receipt thereof, (deducting the $3000 which the treasury had paid them) became the subject matter of inquiry in this suit, which depended on a single point, which of the parties furnished the rations ?   Or in other words, whether Bradshaw, who made the greater part of the purchases, transacted the business as the agent of the plaintiffs, or of the defendant?

The just decision of this much disputed question, rests on a great variety of facts and proofs ; the minute detail whereof I have found it impracticable to make, amid the hurry of other official duties since the argument ; and which if I had been able to effect, I should have deemed unnecessary upon this occasion. It has unfortunately happened, that the testimony of the witnesses is contradictory and irreconcilable, in many material instances.   The duty of the jury to reconcile the testimony, and

the rules for weighing the evidence, where that cannot be reasonably done, was laid down to the jury, fully from the books.

The charge of the judge on the most careful examination, appears to me, to be correct in all its parts. Except as to the reserved points, the counsel themselves admit, that the case went fairly to the jury. The question submitted most chiefly turned on the credit which the jury would give to the several witnesses.

Of their credibility, the jury were the exclusive constitutional judges. This court will never invade their province ; although I trust they will firmly assert their judicial rights, where the principles of law have been violated by a jury however respectable, or where the weight of evidence manifestly preponderates against their verdict. Without the cautious and discreet exercise of the controlling power of the court in proper cases, justice at this day cannot be administered.

The jury have found a verdict for the plaintiffs after a full *and patient hearing : and the cause was left wholly to [*455 their decision, as a mere matter of fact. The judge who tried the suit, is not dissatisfied with their finding : it was not contrary to his charge. It must be a plain case indeed, wherein under such circumstances, as I have mentioned, I should conceive myself justified in giving my voice for a new trial.

The indisposition of the defendant during the trial, I much regret. But the testimony of Judge BRACKENRIDGE alone was given in person ; all the rest consisted of depositions and written exhibits. As to the bills and drafts in the defendant's possession at Pittsburgh, which are now supposed by his affidavit to be material, I cannot consider them as grounds for awarding a new trial ; because it was his own fault that he did not produce them at the trial ; and where the party has been in default, he does not bring himself within the rule as to the discovery of new evidence, so as to warrant a new trial. The same remark is referable to the supposition of the defendant, that his cause would not come on to trial, before the judge who was to sit at Nisi Prius, according to the routine of official duty.

The sum found due by the verdict is certainly large ; and if there was strong reasonable ground to believe, that injustice had been done, the court would interpose and direct a re-examination of the case. In the language of the late chief justice, when president of the Court of Common Pleas, 2 Dall. 55, 56, "the "important right of trial by jury requires, that new trials should "never be granted without solid and substantial reasons ; other- "wise the province of jury-men might often be transferred to "the judges ; and *they* instead of the jury, would become the "real triers of the facts. But whenever it appears with a rea- "sonable certainty, that actual and manifest injustice is done, or "that the jury have proceeded on an evident mistake either in "point of law or fact, or contrary to strong evidence, or have "grossly misbehaved themselves, or given extravagant dam-

[Govett, Treasurer, *v.* Reed et al.]

" ages, the court will always give an opportunity by a new trial,
" of rectifying the mistakes of the former jury, and of doing
" complete justice to the parties."

Applying those rules to the case under consideration, I am
constrained to overrule the motion made on the part of the de-
fendant.

Judgment for the plaintiffs.